**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cv-23394-KMM

E.L.S.R. CORP.,

       Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant GEICO General Insurance Company's ("Geico") Motion for Summary Judgment (ECF No. 16). Plaintiff E.L.S.R. Corp ("ELSR") filed a response (ECF No. 17), Geico filed a reply (ECF No. 21), and ELSR, with the Court's leave, filed a surreply (ECF No. 25). For the reasons that follow, the motion for summary judgment is granted.

**I.     BACKGROUND**

Plaintiff ELSR is an assignee of Geico's insured, non-party Cara Ceo ("Cara Ceo" or the "Insured"), and filed the present action against Geico for breach of contract. *See* Def.'s Notice of Removal (ECF No. 1). On March 13, 2014 Cara Ceo signed a rental agreement with ELSR for a 2013 Bentley GTC (the "Rental Car"). *See* Pl.'s Statement of Material Facts ("Pl.'s Facts"), Ex. B (ECF No. 19-2). At the time, Cara Ceo was an insured driver under Geico policy number 4234020222 (the "Policy"), issued to Cara Ceo's parents, and effective December 14, 2013 to June 14, 2014. *See* Certified Geico Insurance Policy (ECF No. 15-1).

On March 15, 2014, the Rental Car was involved in an accident in Miami-Dade County, and was damaged as a result.  *See* Florida Traffic Crash Report (ECF No. 15-2).  At the time of the accident, a white male driver was operating the Rental Car.  *See id.*; *see also* Geico's Activity Log, GLC 168–69 (ECF No. 15-4).  Cara Ceo did not occupy the Rental Car during the accident.  *See* Aff. of Cara Ceo (ECF No. 15-3).

The accident was reported to Geico on March 21, 2014 (the "Ceo Claim").  *See* Geico's Activity Log, GLC 168–69 (ECF No. 15-4).  Brian Broussard, a liability adjuster for Geico called Cathleen Ceo, Cara Ceo's mother, to inform her that Geico was investigating the coverage issue and did not yet have a final decision.  *See* Broussard Dep., 21:17–23 (ECF No. 19-4).  In the course of its investigation into the Ceo Claim, Geico discovered that an individual named Aaron Preston was driving the car at the time of the accident.  *See id.* at 6:11–24 (ECF No. 19-4); *see also* Geico's Activity Log, GLC 168–69 (ECF No. 15-4).

On April 7, 2014, Geico sent a reservation of rights letter to the Insured, advising that the Rental Car might not meet the definition of an "owned auto," a "non-owned auto," or a "temporary substitute auto" under Section I of the Policy.  *See* Geico's Reservation of Rights Letter (ECF No. 15-6).  Subsequently, on April 11, 2014, Geico sent a letter to counsel for ELSR, advising that Geico was denying coverage for the damage.  *See* Geico's Denial Letter (ECF No. 15-7).  The letter to counsel cited Sections I and III of the Policy as the basis for Geico's denial of coverage.[1]  *See id.*  Specifically, Geico stated, in the letter:

---

[1] Section I and III of the Policy read, in relevant part:
**SECTION I – LIABILITY COVERAGES**
**DEFINITIONS**
The words bolded and italicized in Section I of this policy are defined below.
. . .
**5. *Non-owned auto*** means a ***private passenger, farm*** or ***utility auto*** or ***trailer*** not owned by, furnished or available for regular use of either ***you or your relative***,

The Denial is made due to [*sic*] Aaron Preston does not meet the definition of a person who is insured under our auto policy for Liability and Physical Damages Coverage while driving a 2013 Bentley GTC which is not owned by our insured.

---

other than a ***temporary substitute auto***.  An auto rented or leased for more than 30 days will be considered as furnished or available for regular use.

. . .

**13. *You*** and ***your*** means the named insured shown in the declarations or his or her spouse if a resident of the same household.

**LOSSES WE WILL PAY FOR YOU**

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

. . .

2. Damage to or destruction of property, arising out of the ownership, maintenance or use of the . . . ***non-owned*** auto . . . .

. . .

**EXCLUSIONS**

Section I Does Not Apply:

. . .

10. To damage:

. . .

(b) To property rented to or in charge of an ***insured***.

. . .

**SECTION III – PHYSICAL DAMAGE**
**DEFINITIONS**

The definitions of the term[ ] . . . ***non-owned auto*** . . . under Section I apply to Section III also.

. . .

**7. *Insured*** means:

. . .

(b) Regarding a ***non-owned*** auto, ***you*** and ***your relatives***, when driving the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the extent of that permission.

. . .

**LOSSES WE WILL PAY**

. . .

***Collision***

1. We will pay for ***collision loss*** to the ***owned auto*** for the amount of each ***loss*** less the applicable deductible and to the ***non-owned auto*** for the amount of each ***loss*** less the applicable deductible when driven by ***you*** or a ***relative***.

*See* Certified Geico Insurance Policy (ECF No. 15-1) (emphasis in original).

Furthermore, because our insured's [*sic*] were not driving or occupying the rental car at the time of the incident, we do not have any coverage for any damage to the rental car itself and any other damage that were sustained in this accident.

*Id.*

A short time after Geico sent the letter denying coverage, Tina Swindell, Broussard's supervisor, reopened the Ceo Claim.  *See* Broussard Dep., 13:3–4 (ECF No. 19-4).  On April 18, 2014, Swindell overturned the coverage determination denying the physical damages portion of the Ceo Claim under Section III of the Policy.  *See* Pl.'s Facts, Ex. C at GLC 201 (ECF No. 19-3).  Swindell called counsel for ELSR and advised that the denial was in error.  *Id.* at GLC 200.  She also stated that Geico would "be on this for the rental [damages] under the [collision] coverage" and that ELSR should call back with the amount of damages.  *Id.*

The Rental Car was sent to Prestige Imports, a body shop, for repairs.  *See* Geico Inspection Statement (ECF No. 19-5).  After Prestige Imports completed the body repairs, the Rental Car was towed to the dealer for remaining repairs.  *See* Geico Supplement of Record 1 Summary (ECF No. 19-7).  On August 20, 2014, Geico issued a payment to Braman Motors in the amount of $14,855.35, with reference to the Ceo Claim, in payment of "Collision Coverage." *See* Pl.'s Facts, Ex. F (ECF No. 19-6).  On August 29, 2014, Geico produced a supplemental estimate in the amount of $60,395.78 based on the repair cost.  *See* Pl.'s Facts, Ex. C at GLC 183 (ECF No. 19-3); *see also* Geico Supplement of Record 1 Summary (ECF No. 19-7).

On October 6, 2014, Geico contacted counsel for ELSR and advised that coverage on the Ceo Claim was still pending.  *See* Pl.'s Facts, Ex. C (ECF No. 19-3).  Finally, on October 28, 2014, Geico sent denial letters to the Insured and counsel for ELSR denying coverage.  *See* Pl.'s Facts, Ex. I (ECF No. 19-9).  The letter to the Insured cited Sections I and III of the Policy as a basis for denying coverage.  *Id.*

On March 19, 2015 the Insured assigned the rights and benefits of the collision portion of the Policy to ELSR in exchange for a release of all claims. *See* Assignment of Insurance Benefits (ECF No. 19-1). On August 14, 2015 ELSR commenced the instant action against Geico in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and on September 8, 2015 Geico filed a Notice of Removal based on diversity jurisdiction. *See* Def.'s Notice of Removal (ECF No. 1). The one-count Complaint alleges breach of contract based on Geico's failure to pay the full loss. The Complaint further alleges "[a]lternatively, Defendant has waived certain conditions or is estopped from asserting said conditions." *Id.* ¶¶ 9–12.

Geico now moves for summary judgment.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The material facts are determined by the substantive law applicable to the case, and a genuine issue exists as to those facts when "a reasonable jury could return a verdict for the non-moving party." *Id.*

The moving party bears the initial burden of showing absence of a genuine issue as to all material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries this burden, responsibility shifts to the non-moving party to "show the existence of a genuine issue as to the material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citations omitted). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. at

242).  In deciding a motion for summary judgment, the court must view all of the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Importantly however, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson*, 477 U.S. at 253.  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Tyson Foods, Inc.*, 121 F.3d at 646 (citations omitted).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## III.    DISCUSSION

ELSR appears to abandon its claim for breach of contract based on coverage under the Policy.[2]  This case therefore rises and falls on whether Florida's limited promissory estoppel exception prevents Geico from denying coverage.  After careful review of the evidence, the Court finds as a matter of law that it does not.  Accordingly, Geico is entitled to summary judgment.

Under Florida law "[t]he general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage."  *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661 (Fla. 1987) ("Equitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss.  In other words, it will not avail in offense, but only in defense.") (quotation marks and citations omitted).  While Florida recognizes the "very narrow"

---

[2] ELSR's opposition papers narrow the issue to "whether the *McBride* promissory estoppel exception to insurance contracts applies in this case."  *See* Pl.'s Response, 1 (ECF No. 17).

exception of promissory estoppel, the exception may only be used to create insurance coverage where not to do so "would be virtually to sanction the perpetration of fraud or would result in other injustice." *Id.* (quotation marks and citations omitted).  "As the careful limitation on the exception suggests" promissory estoppel is "strictly intended to be a rare and limited remedy." *Florida Mun. Ins. Trust v. Vill. of Golf*, 850 So. 2d 544, 553 (Fla. 4th DCA 2003) (Farmer, J., dissenting).

Where fraud is not alleged, the party seeking to invoke the doctrine must show by clear and convincing evidence that "the promisor reasonably should have expected that [its] affirmative representations would induce the promisee into action or forbearance substantial in nature," and that "such reliance thereon was to [the promisee's] detriment." *Crown Life*, 517 So. 2d at 662 (citation omitted).  When the Florida Supreme Court recognized this limited exception in *Crown Life*, two concurring opinions stressed the importance of the clear and convincing evidence standard.  *Id.* at 663.  In one, Justice Willis opined:

> [T]o support a finding of [promissory] estoppel the facts necessary to constitute it must be shown with certainty and not taken by argument or inference, nor supplied by intendment, but clearly and satisfactorily proved.  This is a significantly higher degree of proof than by the greater weight of the evidence . . . These standards, and the quantum of proof required, places the burden upon the trial court to ascertain that there is competent, substantial evidence . . . which would constitute clear and convincing proof of the existence of the factual elements necessary to establish an estoppel, before submitting the issue to a jury.

*Id.* (Willis, J., concurring).

The *Crown Life* court was mindful of this burden.  There, the court was presented with testimony of the plaintiff who, upon obtaining new employment, made inquiry of his new employer's group health insurance provider as to whether his son would be covered under the policy.  *Id.*  The insurer responded in the affirmative, and the father testified that based on this representation, he elected insurance under his new employer's policy and allowed the conversion

7

option on his prior insurance coverage to lapse.  *Id.*  When the insurer later denied coverage for the son, the family sued, arguing that the insurer was estopped to deny the son coverage.  *Id.*

The court recognized that the creation of coverage could be possible under a theory of promissory estoppel, but found that plaintiff failed to meet the clear and convincing evidentiary burden required to establish such estoppel.  *Id.*  The court reasoned that plaintiff offered only his own testimony that he had the option to convert his other insurance and that he failed to identify exactly what benefits would be provided under the conversion coverage.  *Id.*  The court concluded that without more evidence, such as "written policy, memoranda, witnesses, or other evidence to support [the] testimony" plaintiff "did not prove that the lapsing of the prior coverage was to his detriment or that refusal to enforce the alleged promise would sanction the perpetration of a fraud."  *Id.*

Here, ELSR submits only its own, unnotarized declaration to show detrimental reliance.[3] Therein, ELSR states that it would not have agreed to the repairs proposed or the costs calculated had Swindell not reopened the Ceo Claim.  *See* Decl. of Jason Cuza ¶ 3 (ECF No. 19-10).  ELSR does not specify, however, by declaration or by supporting evidence, which parts were too expensive, which parts it could have paid a lower price for, or which repairs the Rental Car could have done without in order to save money.  ELSR's bare assertions fail to show how the Rental Car—a Bentley—could have or would have cost less to fix had Geico not represented that it would cover the damage.

---

[3] The Court questions whether an unnotarized affidavit, on its own, can ever create a question of material fact sufficient to defeat summary judgment.  *See Tangwall v. Jablonski*, 111 F. App'x 365, 368 (6th Cir. 2004) (unnotarized, undated affidavit was insufficient to create question of material fact); *Semien v. Pizza Hut of America Inc.* 204 F.3d 1115, 1115 (5th Cir. 1999) (unnotarized affidavit was not valid summary judgment evidence).

ELSR also states, alternatively, that it would have contested coverage with Aaron Preston's insurance company. *Id.* ¶ 4. But again, the declaration falls short, as ELSR fails to set forth evidence that Preston was, in fact, insured at the time of the accident such that ELSR could have contested liability. Further, even if Preston was insured at the time of the accident, ELSR does not explain why it cannot now seek repayment under Preston's policy.

In short, ELSR has not shown that the Court's failure to extend coverage would sanction fraud or injustice. *Crown Life*, 517 So. 2d at 662. Although the Court must view the evidence in the light most favorable to ELSR, it is also mindful of its obligation to "view the evidence presented through the prism of the substantive evidentiary burden." *See Anderson*, 477 U.S. at 254 ("[T]he trial judge must bear in mind the actual quantum and quality of proof necessary to support [the claim]."). Without more, the Court cannot say that "the evidence presented"— ELSR's own unnotarized declaration—is "such that a reasonable jury might find that [detrimental reliance] has been shown with convincing clarity." *Id.* ("[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [an element] by clear and convincing evidence.").

Summary judgment in Geico's favor is therefore appropriate.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ordered and adjudged that Geico's Motion for Summary Judgment is granted.

All other pending motions are denied as moot.  The Clerk of Court is instructed to close this case.

Done and ordered in Chambers at Miami, Florida, this 29th day of April, 2016.

 

 

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:      Counsel of record